OPINION
Appellant James Moore was adjudicated delinquent and committed to the custody of the Ohio Department of Youth Services until he reaches age twenty-one for aiding and abetting, with a firearm specification, in the felonious assault and murder of Romanial Satchel and for carrying a concealed weapon. His appeal challenges the adequacy of the lower court's record and the sufficiency and weight of the evidence against him. We conclude that his arguments on appeal are not well taken, so we affirm the judgment.
The facts are that some time between 8:00 p.m. and 9:00 p.m. on June 19, 1998, Romanial Satchel, then age twenty-one, was walking east on Detroit Avenue in Cleveland, Ohio, along with three teenage females. Satchel saw James Moore, then age thirteen, and Antonio Johnson, then age seventeen, on a street corner. Approaching Moore and Johnson, Satchel said, "What the fuck are you doing on my corner?" (8/24/98 Tr. at 80.) Moore and Johnson said nothing. Satchel told them, "Don't let me catch you up here no more," and walked away. (8/24/98 Tr. at 80.)
Satchel and his three female companions then walked east several blocks to W. 61st Street, where they observed Moore and Johnson riding bicycles towards them. After Moore and Johnson dismounted their bicycles, Moore produced a black handgun that had been in his pants and pointed it at Satchel. (8/24/98 Tr. at 81-83, 104; 9/28/98 Tr. at 7, 9.) Words were exchanged before a resident came out of a house near where this confrontation was occurring, at which time Moore and Johnson departed on their bicycles.
Satchel and his companions then walked to Herman Park. Approximately ten minutes later, as Satchel and his friends sat on park benches, Moore, Johnson, and five or six other teenage males advanced on them. Johnson approached Satchel and said "[s]omething about talking shit." (8/24/98 Tr. at 86.) Satchel stood and started to back away when Johnson pulled out a black handgun. Two of the females with Satchel testified that the gun appeared to be the same gun Moore brandished minutes earlier. (8/24/98 Tr. at 87, 111; 9/28/98 Tr. at 15.)
Johnson struck Satchel twice in the face with the gun, causing Satchel to fall to the ground. All of the other males with Johnson, including Moore, then began "stomping on [Satchel], punching him, kicking him" while Johnson "kept hitting him in his face with the gun." (8/24/98 Tr. at 86; 9/28/98 Tr. at 14.) Satchel was attacked by the males for five or six minutes until all but Johnson backed away and, while holding Satchel by his shirt, Johnson twice more struck Satchel in the face with the gun before releasing him. (8/24/98 Tr. at 88-89.)
Badly bloodied, Satchel crawled across the street to escape and attempted to stand up only after crossing. A male not identified as Moore said, "Don't let that nigger get away." (8/24/98 Tr. at 91; 92.) Johnson trained the gun on Satchel and fired once, shooting Satchel through the back of his head. Satchel fell face down, suffering a fatal gunshot wound with perforation of the skull and brain.
Moore was charged with aiding and abetting, with a firearm specification, in the murder and felonious assault of Satchel, and with carrying a concealed weapon. The Juvenile Court found the allegations against Moore to be true and adjudicated him delinquent. Moore's appeal presents three assignments of error, which we will address in reverse sequence.
Moore's third assignment of error states:
 III. THE VERDICT OF THE TRIAL COURT SHOULD BE SET ASIDE BECAUSE THE COURT FAILED TO MAINTAIN A COMPLETE RECORD OF THE PROCEEDINGS AGAINST APPELLANT AND THEREBY DENIED HIM THE EFFECTIVE ABILITY TO APPEAL THE JUDGMENT IN VIOLATION OF HIS RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS.
Moore complains that the transcript of the October 22, 1998 dispositional hearing was incomplete. While an incomplete four-page transcript of that hearing was initially transmitted to this court, a supplemental seven-page transcript containing the full proceeding was subsequently filed in this matter. Accordingly, the trial court did not fail to maintain a complete record of proceedings, so Moore's third assignment of error is overruled.
Moore's second assignment of error states:
 II. THE TRIAL COURT'S FINDINGS OF TRUE AGAINST THE APPELLANT FOR COMPLICITY TO MURDER, IN VIOLATION OF OHIO REVISED CODE SECTIONS 2903.02 2923.03(A) AND COMPLICITY TO FELONIOUSLY ASSAULT, IN VIOLATION OF OHIO REVISED CODE 2903.02 [SIC] 2903.11 WERE IMPROPER BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDINGS.
This assignment of error is not well taken.
State v. Jenks (1991), 61 Ohio St.3d 259, establishes our standard of review here:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, followed.)
State v. Jenks, supra, syllabus at para. 2.
In this case, Moore contends the evidence was insufficient to find, under R.C. 2923.03, that he aided and abetted in what would have been the offenses of murder, R.C. 2903.02, and felonious assault, R.C. 2903.11, if Moore were an adult. "Under R.C.2923.03, a person may be an accomplice in an offense and prosecuted as the principal offender if, among other things, he aids or abets another in committing the offense while acting with the kind of culpability required for commission of the offense."State v. Coleman (1988), 37 Ohio St.3d 286, syllabus at para. 2. "To aid is to assist. To abet is to incite or encourage." Statev. Sims (1983), 10 Ohio App.3d 56, 58. A person's mere association with a principal offender is not an aiding or abetting of the principal's act; there must be some active participation, assistance, or encouragement by the accomplice. See State v. Nievas (1997), 121 Ohio App.3d 451, 456; State v.Sims, supra. The accomplice's criminal intent may be inferred, by direct or circumstantial evidence, from the presence, companionship, and conduct of the accomplice both before and after the offense is committed. See State v. Nievas,121 Ohio App. 3d at 456-457; State v. Pruett (1971), 28 Ohio App.2d 29, 34. We turn now to consider whether the juvenile court correctly found the allegations against Moore to be true.
At the time this offense occurred on June 19, 1998, R.C.2903.02 provided in part that "[n]o person shall purposely cause the death of another * * *."[1] Moore argues the evidence was insufficient to prove he acted with the kind of culpability necessary to purposely cause the death of another. We cannot agree.
In In re Washington (1998), 81 Ohio St.3d 337, a juvenile was adjudicated delinquent as an aider and abettor to aggravated murder and aggravated robbery for his active participation in a plan to rob a cab driver at gunpoint. In that case, Washington and two others entered the cab and demanded the cab driver's money. When the cab driver saw Washington's accomplice had a shotgun, the driver attempted to put the cab in gear, at which time the accomplice shot him dead. Washington argued that the evidence was insufficient to prove he acted with the requisite intent to cause death while aiding or abetting another person in the commission of the crime. The Supreme Court of Ohio held that the intent to kill could be inferred from Washington's participation in planning and executing the robbery, noting:
 The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.
Washington, 81 Ohio St.3d at 340 (quoting State v. Huffman
(1936), 131 Ohio St. 27, syllabus at para. 4). The Washington
court concluded that because Washington participated in the planning, rehearsal, and execution of the armed robbery and that the intent was to scare the victim into complying by brandishing an operable gun, a rational trier of fact could find that Washington acted with the requisite intent to kill even though Washington did not pull the trigger.
Similarly, in In re Watson (1989), 47 Ohio St.3d 86, cert.denied (1990), 495 U.S. 937, the court upheld delinquency adjudications against juveniles Terrence Watson and David Johnson who, with two other accomplices, attacked their victim in a city park. One accomplice struck the victim on the back of his head with a tree limb, causing the victim to fall to the ground. Terrence Watson punched the victim at least two times. The first accomplice hit the victim several more times, and the second accomplice hit the victim with a piece of concrete. David Johnson had previously been observed carrying a concrete brick in the vicinity of the park. All four assailants fled, and the victim subsequently died from any one of four distinct blows to the head. Watson and Johnson were both adjudicated delinquent for having committed acts that, had they been adults, would constitute complicity to murder. The Ohio Supreme Court held that the findings against Watson and Johnson were supported by sufficient evidence and were not against the manifest weight of the evidence.
Other cases likewise confirm that an offender who assists, incites, or otherwise encourages another to shoot may be found to have aided and abetted in the murder. In In re Jones (Sept. 30, 1998), Franklin App. No. 98AP-152, unreported, Jones was adjudicated delinquent for complicity to murder when, during an altercation, Jones reportedly handed a gun to an accomplice who then fatally shot the victim. Jones argued that the state failed to prove he possessed the requisite intent to kill the victim. The court held that Jones' delinquency adjudication was not against the manifest weight of the evidence, implicitly confirming that the evidence was at least sufficient to permit the trier of fact to weigh that evidence.[2] See also State v.Fields (1995), 102 Ohio App.3d 284 (evidence sufficient to convict defendant for complicity to murder when defendant goaded accomplice to shoot victim); In re Johnson (Dec. 20, 1996), Montgomery App. No. 15299, unreported (evidence sufficient to adjudicate juvenile delinquent for complicity to murder when juvenile told accomplice to shoot).
Reviewing the evidence before us in the light most favorable to the prosecution, we conclude the evidence was sufficient to prove Moore acted with the kind of culpability required to commit murder. The evidence showed that Moore brandished a black handgun when he and Johnson confronted Satchel and the three females on W. 61st Street. At Herman Park a short time later, Moore, Johnson and others approached Satchel. Johnson brandished a black handgun that appeared to be the same gun Moore brandished minutes earlier. Johnson hit Satchel in the face with the gun, knocking Satchel to the ground. Then Moore, Johnson and the others savagely attacked Satchel for five to six minutes before leaving him to crawl for his life. As Satchel attempted to stand to escape, one of the males, not identified as Moore, encouraged Johnson to shoot, and Johnson immediately put a bullet through Satchel's head.
We believe a rational trier of fact could find that Moore acted with the kind of culpability required to commit murder. Moore actively participated in the sustained attack. Moore had knowledge that Johnson was armed with the black handgun Moore himself had previously brandished. Moore knew Johnson continued to use the gun throughout the course of the assault. Viewed most favorably for the prosecution, this evidence showed that Moore acted with the intent necessary to commit the crime, even though Moore did not fire the fatal shot.
We acknowledge that several witnesses testified they were surprised when Johnson fired the gun. But a rational trier of fact could find that Johnson's actions should have come as no surprise to Moore. He had earlier pointed the gun directly at Satchel on W. 61st Street. Johnson used the gun throughout the subsequent attack on Satchel in Herman Park. Moore's willing participation in the assault hardly reduced the danger that the gun would be fired. The ultimate discharge of the gun by Johnson was the tragic but foreseeable denouement to the sequence of events Moore himself helped set in motion.
We likewise conclude that the evidence was sufficient to find that Moore acted with the kind of culpability necessary to commit felonious assault. R.C. 2903.11 provides in part:
(A) No person shall knowingly:
(1) Cause serious physical harm to another * * *;
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
In view of the evidence we have previously noted, a rational trier of fact could readily find in this case that Moore, as either a principal or as an aider and abettor, committed acts that would constitute felonious assault if he were an adult. See,e.g., State v. Hawkins (Aug. 19, 1999), Cuyahoga App. No. 74678, unreported (sufficient evidence to find defendant guilty of complicity in felonious assault when accomplice struck victim on head with a gun and, with victim dazed and against the wall, defendant immediately began to punch victim in face).
We conclude that there was sufficient evidence to sustain the charges against Moore. Accordingly, we overrule his second assignment of error.
Moore's first assigned error contends:
 I. THE TRIAL COURT'S FINDINGS OF TRUE AGAINST THE APPELLANT FOR COMPLICITY TO MURDER, IN VIOLATION OF OHIO REVISED CODE SECTIONS 2903.02 2923.03
(A) AND COMPLICITY TO FELONIOUSLY ASSAULT, IN VIOLATION OF OHIO REVISED CODE 2903.02 [SIC] 2903.11 WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
This assignment of error is not well taken.
When reviewing whether a judgment is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. See State v. Thompkins, supra,78 Ohio St.3d at 387; State v. Martin (1983), 20 Ohio App.3d 172,175. After having reviewed the record before us, we cannot say that the trier of fact clearly lost its way in finding that Moore committed the acts with which he was charged. Accordingly, we overrule Moore's first assignment of error.
The judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J., and JOHN T. PATTON, J., CONCUR.
 _________________________________ DIANE KARPINSKI JUDGE
[1] R.C. 2903.02 was amended effective June 30, 1998.
[2] See State v. Thompkins (1997), 78 Ohio St.3d 380, 388 ("A reversal based on the weight of the evidence, moreover, can occur only after the State has presented sufficient evidence to support conviction and has persuaded the jury to convict.") (Emphasis in original) (quoting Tibbs v. Florida (1982), 457 U.S. 31, 42-43).